**SO ORDERED.**

**SIGNED this 03 day of December, 2008.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:                                                              CASE NO.

**GENE GARRIS HOMES, INC.,**                      08-03917-8-RDD

DEBTOR

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Pending before the Court is Wayne Investments, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). Hearings were held in Wilson, North Carolina on September 29, 2008 and October 21, 2008. The September 29, 2008 hearing resulted in the entry of an order setting the hearing for preliminary injunction on October, 21, 2008, while BB&T agreed to continue the foreclosure sale to October, 28, 2008.

Wayne Investments, Inc. ("Wayne Investments") filed the pending Motion requesting that the Court impose a temporary restraining order and preliminary injunction against Branch Banking and Trust Company ("BB&T") with respect to its foreclosure in connection with certain property located in Craven County. Wayne Investments requests that the court enter a preliminary injunction

until such time as the as the Court makes a determination as to Wayne Investments' claim of title to such property.

BB&T objected to the Motion at the Emergency Hearing on September 29, 2008 and renewed its objection at the hearing on October 21, 2008.

**I.    BACKGROUND**

On June 18, 2008, Gene Garris Homes, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. Walter L. Hinson was appointed Chapter 7 Trustee (the "Trustee"). Prior to the filing of the petition, Gene Garris, the president of Debtor, died, leaving Arlene Garris as the surviving shareholder of the Debtor and in severe financial straights.

Upon his appointment, the Trustee commenced his investigation of potential assets that might be available for distribution to unsecured creditors. On July 16, 2008, BB&T filed a Motion for Relief from the Automatic Stay (the "Relief Motion") requesting that the Court lift the automatic stay and allow BB&T to proceed with its state law rights and remedies against certain properties owned by the Debtor.

On July 28, 2008, the Trustee filed a Motion In the Cause to Stay All Actions and Proceedings Against the Debtor, Related Entities, and Other Interested Parties (the "Blanket Stay Motion") requesting that the court stay all proceedings for ninety (90) days to permit the Trustee ample time to investigate which properties, if any, should be surrendered to secured creditors or which properties should be administered by the Trustee. Also on July 28, 2008, the Trustee filed his Response to the Relief Motion requesting denial of the Relief Motion based on the facts alleged in the Blanket Stay Motion. A hearing was held on September 3, 2008. Glenn A. Barfield, attorney at law, was present at that hearing on behalf of Wayne Investments.

At the hearing on September 3, 2008, the Court granted the Blanket Stay Motion and requested that the Trustee circulate a proposed order with the parties. In addition, the Trustee stated that he had reached an agreement with BB&T and that a consent order would be forthcoming in connection to BB&T's Relief Motion. Also, during that hearing, Wayne Investments and BB&T indicated that they had reached a consent agreement in connection with 9122 Riverview Drive (the "Real Property").

The order granting the Blanket Stay Motion was filed on October 7, 2008 and provides that the automatic stay will remain in place with respect to the real property at issue in this case and in the Arlene Garris case with case no. 08-03920-8-RDD through and including October 28, 2008 (the "Blanket Stay Order")[1]. Also, on October 7, 2008, the Court entered a Consent Order between the Trustee and BB&T which set forth that BB&T was the holder of a Deed of Trust and Promissory Note in connection with the Real Property, that the Trustee has made a determination that there was no equity in this Real Property, and as a result, the automatic stay was lifted in favor of BB&T.

Although Wayne Investments did not file a motion seeking relief from the automatic stay, the Trustee and Wayne Investments entered into a consent order. On October 7, 2008, the Court entered the Consent Order Modifying the Automatic Stay between Wayne Investments and the Trustee (the "Wayne Consent Order"). The Wayne Consent Order set forth, in part, that (1) BB&T obtained relief from the automatic stay for the purpose of foreclosing on the Real Property; (2) the Debtor acquired record title by Deed from Wayne Investments, dated June 26, 2006; (3) on April 24, 2008, Wayne Investments commenced a civil action in Craven County, Superior Court against the

---

[1] Wayne Investments did not file a Motion for Relief from the Automatic Stay in either bankruptcy case. However, based on the language of the Wayne Consent Order (herein defined), Wayne Investments asserts an interest in the same real property on which BB&T claims a first priority lien.

3

Debtor and BB&T seeking, among other relief, the invalidation of the Deed, dated June 26, 2006 from Wayne Investments to the Debtor, and the Deed of Trust from the Debtor to BB&T; (4) prior to the filing of the state court action by Wayne Investments, BB&T had a pending foreclosure in which Wayne Investments filed a Motion to Intervene on June 4, 2008[2]; and (5) since BB&T has obtained relief from the automatic stay, Wayne Investments likewise has relief from the stay to pursue its Motion to Intervene in the foreclosure proceeding and attempt to stay the foreclosure.

On September 26, 2008, Wayne Investments filed the Motion requesting this Court to temporarily restrain the foreclosure sale of the Real Property based on Wayne Investments' claim that the transfer of the Real Property to the Debtor from Wayne Investments was invalid. The Motion sets forth that even though the orders lifting the automatic stay had not been entered by this Court,[3] BB&T filed and served a "Notice of Foreclosure Under Deed of Trust" with respect to the Real Property on September 9, 2008 setting the foreclosure sale for September 30, 2008 at 10:00 a.m.

The Motion also alleged that Wayne Investments sought and obtained a hearing in the state court foreclosure action on its motion to stay the foreclosure proceeding. The state court hearing was held in front of Judge Jack Jenkins in Carteret County Superior Court on September 22, 2008. Counsel for Wayne Investments indicated that on September 26, 2008 he received a call from Judge

---

[2] Factually, there appears to be a dispute as to when BB&T commenced the foreclosure proceeding in state court. The Motion sets forth in paragraph 3 that the foreclosure proceeding was commenced after Wayne Investments filed its complaint seeking to set aside the transfer; however, the Wayne Consent Order provides that the foreclosure proceeding was commenced prior to the state court action brought by Wayne Investments. The inconsistency in the timing of when the state court action was filed has no impact on the decision of this Court as both state court actions were commenced prior to commencement of the bankruptcy case.

[3] Hearings on the Blanket Stay Motion and Relief Motion were held on September 3, 2008. However, the Blanket Stay Order, the BB&T Consent Order, and the Wayne Consent Order were not entered until October 7, 2008.

4

Jenkins' law clerk informing him that the judge intended to deny the motion to stay the foreclosure but that the order had not yet been entered.

On October 1, 2008, Judge Jack Jenkins, presiding judge in the state court proceedings entered an Order Denying the Motion to Intervene and Motion for Preliminary Injunction (the "State Court Order") filed by Wayne Investments.

In its Motion before this Court, Wayne Investments requests that the court temporarily restrain BB&T from conducting the foreclosure sale until such time as the Court can conduct a hearing on the merits of Wayne Investments' motion to preliminarily enjoin the sale pending disposition of Wayne Investments claim of title to the Real Property. Wayne Investments requests the Court to restrain BB&T from moving forward with the sale scheduled on September 30, 2008 based on the fact that the foreclosure sale was set before the Relief Order was entered and that such an action violates the automatic stay.[4]  In addition, Wayne Investments seeks a "preliminary injunction restraining the foreclosure sale until the issues of legal and equitable title to the property have been determined." *Motion, para. 16*.

An emergency hearing was held in Wilson, North Carolina on September 29, 2008.  During that hearing, Joan Davis, counsel for BB&T, indicated that she informed her client that it could not proceed with the foreclosure sale as the Relief Motion Order had not been entered.  Based upon the representation of counsel that the foreclosure sale was not going to proceed on September 30, 2008, the Court continued the hearing until October 21, 2008 to consider whether a preliminary injunction staying the foreclosure action should be entered by this Court.  BB&T announced its intentions to

---

[4] Wayne Investments fails to acknowledge that its efforts to pursue a stay in the foreclosure proceeding also violates the automatic stay.  As of the hearing on its motion to stay the foreclosure action in the state court, the Wayne Investments Order had not been entered granting Wayne Investments relief from the automatic stay to proceed in the state court action. The Relief Order was not entered until October 7, 2008.

5

postpone the foreclosure sale until October 28, 2008 and the Court set a hearing on the preliminary injunction on October 21, 2008.

## II.     Factors to Consider in Granting Preliminary Injunctions

The Fourth Circuit recognizes that courts should issue preliminary injunctions sparingly and only in limited circumstances. *Microstrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir. 2001)(quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). A preliminary injunction is an extraordinary remedy that involves a broad reach of the Court's power. *Microstrategy Inc.,* 245 F.3d at 339 (quoting *Direx Israel, Ltd.*, 952 F.2d at 816).

The Fourth Circuit set forth the standard for issuing a preliminary injunction in *Blackwelder Furniture Co. v. Seilig Manufacturing*, 550 F.2d 189 (4th Cir. 1977). *See also Microstrategy Inc.*, 245 F.3d at 339. Under the *Blackwelder* standard, courts should balance four factors in considering if an injunction is warranted. These four factors include: (i) the likelihood of irreparable harm to the movant if the injunction is denied; (2) the likelihood of harm to the respondent if the injunctive relief is granted; (3) movant's probability of success on the merits; and (4) whether public interest is served by granting injunctive relief. *Blackwelder*, 550 F.2d at 196. The factors should be weighed on a sliding scale, with the two more important factors being those of irreparable harm to the plaintiff and the potential harm to the defendant should the injunction be granted. *Id*. at 195. If the balance of harm is not shown to be in the plaintiff's favor, the court should place more weight on the importance of whether the plaintiff can establish that there is a likelihood of success on the merits. *Id*.

## III.    Analysis of the Preliminary Injunction Factors

Wayne Investments will not be irreparably harmed if the injunction is denied. Wayne Investments has been an active participant in this bankruptcy case and in the matters related to the

BB&T Motion for Relief since the filing of the motion. Since that time, Wayne Investments negotiated the specific terms of the Wayne Consent Order setting forth "that since BB&T has obtained relief from the automatic stay, Wayne Investments likewise has relief from the stay to pursue its Motion to Intervene in the foreclosure proceeding and attempt to stay the foreclosure." *See Wayne Consent Order.* Wayne Investments had the option to file a removal action[5] or litigate this matter before the state court. Based on the specific language in the Wayne Consent Order, it is clear that Wayne Investments chose the state court, in which it intended to proceed with its claim against both the Debtor and BB&T.[6]

Since the Wayne Consent Order was entered, the state court has heard argument and ruled against Wayne Investments' Motion to Stay the foreclosure proceeding based on its claim to title. More specifically, Judge Jenkins found that "the Motion to Intervene should be denied in that the Movants lack standing to intervene in the foreclosure action and that the Motion for Preliminary Injunction should be denied on the grounds that the Movants have failed to meet their burden of proof regarding irreparable harm and failed to demonstrate a likelihood of success on the merits of their claims." *See Order Denying Motion to Intervene and Motion for Preliminary Injunction, Judge Jack W. Jenkins, Carteret County Superior Court, Case Nos. 08-CVS-571 and 08-SP-186 (October 1, 2008).*

---

[5] Wayne Investments consented to the removal of a similar action originally filed in Wayne County against RBC Bank. *See Adversary Proceeding No. 08-00103-8-RDD.*

[6] As previously noted, Wayne Investments did not file its own Motion for Relief from the Automatic Stay. Wayne Investments seeks to invalidate a deed of trust in favor of BB&T with respect to the Real Property on the grounds that Gene Garris, as an officer of Wayne Investments, did not have the authority to execute the deed transferring the Real Property from Wayne Investments to Gene Garris Homes, Inc. As such, Wayne Investments asserts that the deed is invalid. Wayne Investments claims that BB&T should have had knowledge that Mr. Garris did not have the authority to transfer the deed; and therefore, invaliding its lien.

Wayne Investments did not assert that it would be irreparably harmed in this Court until after the motion had been argued before the state court. Wayne Investments did not file its Motion in this Court until September 26, 2008, which was the same day that counsel stated he received a telephone call from Judge Jenkins' law clerk informing him that Judge Jenkins intended to deny the state court motion.

It is only after argument of the same issue in the state court and the prospect that Wayne Investments might not prevail in state court, that Wayne Investments requested that this Court enter an order enjoining the sale of the Real Property pending the disposition of its claim to set aside the deed. However, Wayne Investments' request for relief is untimely.

Assuming that there may have been jurisdiction at the outset of this bankruptcy proceeding,[7] the bankruptcy court no longer has jurisdiction with respect Wayne Investments' request to stay the foreclosure sale. The *Rooker-Feldman* doctrine prohibits a federal court, with the exception of the Supreme Court, from exercising appellate jurisdiction over Judge Jenkins's state court decision. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 202 (4th Cir. 1997) ("The doctrine reinforces the important principal that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal."); *Crosson v. A.A. Fire Safety,* 333 B.R. 794, 801-802 (Bankr. N.D. Ill. 2005) (finding that the *Rooker-Feldman* doctrine prohibits the review of state court decisions by inferior federal courts and that parties who wish to pursue relief must do so in state court, regardless of the errors that the

---

[7]This issue of whether or not there was jurisdiction at the beginning of this bankruptcy case is not before this Court. The court summarily makes this assumption to consider the matters before it in a light most favorable to Wayne Investments.

8

state may have committed). Wayne Investments is attempting to re-litigate the same claims that it argued in front of Judge Jenkins. The Court finds that Wayne Investments' pursuit of its motion to intervene and motion for preliminary injunction that resulted in an unfavorable ruling in the state court precludes the bankruptcy court from hearing this matter based on the *Rooker-Feldman* doctrine.

Wayne Investments elected to proceed in state court, both based upon the language of the Wayne Consent Order and its continued pursuit of the state court action. It had a choice to seek removal of this matter but instead, opted to try its case in state court. Because Wayne Investments did not like the result obtained in the state court, it does not get a second bite at the apple in bankruptcy court. Consequently, since the state court has rendered a decision with respect to the stay of the foreclosure proceeding, Wayne Investments will not be irreparably harmed should the preliminary injunction be denied. Wayne Investments has already had its day in court.

Unlike the lack of harm to Wayne Investments, if the preliminary injunction is granted, BB&T would be irreparably harmed. BB&T reasonably relied on Wayne Investment's request to proceed in state court as set forth in the Wayne Consent Order and has already litigated this matter with Wayne Investments in those proceedings. Requiring BB&T to incur the costs and expenses to re-litigate this matter would result in an irreparable harm since the Debtor has no equity in the Real Property and the fees and expenses would continue to be borne by BB&T.

As to the third prong of the *Blackwelder* test, Wayne Investments failed to persuade the state court that it would likely prevail on the merits if the injunction was entered. With the entry of the order in the state court, Wayne Investments has the right to appeal the decision of the state court to the N.C. Court of Appeals. Wayne Investments chose its forum in state court, and under *Rooker-Feldman* cannot simply appeal or re-litigate the stay in the bankruptcy court.

Lastly, granting the preliminary injunction will not serve a public interest. The Trustee agreed that the automatic stay should be lifted to allow BB&T to foreclose on the Real Property and Wayne Investments to proceed with its claims. The Trustee believes that there is no equity in the Real Property and, therefore, any sale will not benefit unsecured creditors. During the hearing on the preliminary injunction, the Trustee, informed the court that he did not take a position with respect to a preliminary injunction but stated he has agreed for the automatic stay to be terminated.

In contrast, the public interest may be served by denying the preliminary injunction. For the court to maintain the proper balance between the separation of the state courts and federal courts is essential. Given the limits of the *Rooker-Feldman* doctrine and the preclusive effect of the state court order, the Court finds that there is no overriding public policy that would be served in granting the preliminary injunction.

### IV.   Conclusion

In weighing the factors outlined above, the Court finds that a preliminary injunction is not warranted in this case. Wayne Investments will not be irreparably harmed if the injunction is denied as it has obtained a decision from the state court and has certain remedies available to it in that court. Furthermore, there is no overriding public policy which would support the entry of a preliminary injunction by the bankruptcy court in this case. Wherefore, based on the foregoing, Wayne Investments request for a preliminary injunction is **DENIED.**

**SO ORDERED.**

**END OF DOCUMENT**